# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY HOLSTED, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | Case No. CIV-14-208-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Kelly Holsted requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 4, 1970, and was forty-two years old at the time of the administrative hearing (Tr. 43, 161). She completed two years of college work, and has worked as a licensed practical nurse and warehouse worker (Tr. 31, 195). The claimant alleges that she has been unable to work since March 31, 2010, due to autosomal dominant polycystic kidney disease, migraines, chronic staph infections (MRSA), confusion, vision loss, hypertension, depression, behavioral problems, chronic pain, and being immuno-deficient (Tr. 194).

## Procedural History

On May 27, 2011, the claimant applied for benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Kim D. Parrish, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 2, 2013 (Tr. 18-33). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she was able to understand,

remember, and perform simple tasks and instructions, and could sustain concentration necessary to perform unskilled work with the specific vocational profile level of two (Tr. 23). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economy that she could perform, *i. e.*, price marker, mailroom clerk, and laundry sorter (Tr. 32).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess her credibility; (ii) by failing to properly assess several medical opinions in the record, including a treating physician and two consultative examiners; (iii) by failing to properly assess her pain; and (iv) by failing to connect her functional limitations with the assigned RFC. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The ALJ determined that the claimant had the severe impairments of polycystic kidney disease, hypertension, migraine headaches, anxiety, and depression, as well as the nonsevere impairment of a non-healing abscess that indicated MRSA was present (Tr. 20-21). As to her physical impairments, the medical evidence in this case reveals that the claimant received incision and drainage for an abscess on her left thigh at Mercy Health Center on July 27, 200, then was treated at OU Medical Center from July 29, 2009 through August 1, 2009, for a MRSA abscess that resolved on antibiotics, as well as autosomal dominant polycystic kidney disease and hypertension (Tr. 259, 323-324). She returned on April 3, 2010, with complaints of left flank pain, and was treated for a

-4-

urinary tract infection and polycystic kidney disease (Tr. 264-267). She returned three days later with worsening lower back pain, and was admitted. Upon discharge April 9, 2010, she was assessed with a UTI, E. coli, and adult onset polycystic kidney disease with no evidence of nephrolithiasis (Tr. 271). On July 7, 2010, she was once again treated for a UTI upon complaints of left leg pain and dysuria (Tr. 278).

On July 12, 2010, Dr. Lukas Hakagsim, M.D., in the Nephrology Section of the OU Health Sciences Center, sent a letter confirming that the claimant suffers from Autosomal Dominant Polycystic Kidney Disease "which is frequently complicated by infection of the cyst resulting in serious urinary tract infections, chronic pain and chronic pain problems," and stating that she was unable to return to her usual occupation and he could not predict her return to work (Tr. 307). The claimant presented to the emergency room after a fall on June 26, 2011, indicating she had also fallen one month previously, and had swelling and tenderness of the right ankle, no fractures, dislocations or acute bone injury, but a foot fracture at the base of the distal phalanx of the great toe (Tr. 317-320).

On August 9, 2011, Bill Buffington, M.D., conducted a consultative physical examination of the claimant (Tr. 335). Upon his examination, he diagnosed her with: polycystic kidney disease, migraine headaches, hypertension, kidney disease, fatigue, varicose veins, depression, and difficulty concentrating (Tr. 337). His examination notes indicate she had a normal range of motion, but had weak heel/toe walking bilaterally and tenderness in the paraspinous muscles (Tr. 331-334).

On September 21, 2011, a state reviewing physician determined that the claimant could perform the full range of light work, the RFC was restricted for polycystic kidneys, but that there was no medical evidence to support migraines, chronic pain, dizziness, nausea, and chronic fatigue (Tr. 370-371).

The claimant reported continued problems with pain control and decreased energy, (Tr. 309), and in September 2011, Dr. Haragsim referred the claimant for evaluation of her headaches. Upon examination, Dr. James Couch, a neurologist, noted that the claimant had a slight weakness on her left side and a tendency to be less able to walk on her tiptoes on the left than on the right, could not hop on the left foot, was unable to walk tandem, could not maintain a tandem Romberg, and had difficulty with routine Romberg (Tr. 385). He recommended an MRI, found she qualified for having chronic migraines and that she may be having rebound headaches related to her use of hydrocone but that hydrocodone was indicated to treat her kidney disease, and that she had minimal sensory changes (Tr. 385). Other treatment notes from Dr. Haragsim indicate that the claimant had been maintained on narcotics for several years, and that he continued to treat her for her polycystic kidney disease, as well as chronic migraines and hypertension (Tr. 377). On January 20, 2012, she was considered stable with stable renal function and well-controlled blood pressure, but remaining problems with migraine headaches and depression (Tr. 410). On October 3, 2012, the claimant reported to Dr. Haragsim that she was much improved after follow-up with a pain management clinic and psychiatry, so that her chronic pain and depression were alleviated, and blood pressure was well controlled (Tr. 402). Dr. Weineke then took over the claimant's pain medication

management, and the claimant reported an exacerbation of her pain symptoms to him on January 30, 2013. She did not want an increase in her medications but asked for a prescription for a cane, and Dr. Weineke noted that this was not unusual and was a typical pain flare, and he wrote the prescription because she did have increased pain in her left leg which made her somewhat weaker. He characterized this as "par for the course for her" (Tr. 438-441).

A sleep study perform on January 29, 2012, indicated that the claimant had significant daytime sleepiness with a high Epworth Sleepiness score, snoring, and overweight, and included recommendations to avoid driving or operating heavy machinery if not fully alert, and to consider other causes, including medications, depression, or hypothyroidism (Tr. 428).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record. As to the claimant's treating physicians, the ALJ noted in multiple places in his opinion that he found it significant the claimant requested the prescription for a cane, rather than that it was prescribed spontaneously by the physician, finding that she used a cane only by her personal preference and that the request was close in time to her administrative hearing (Tr. 25-26, 28-29). He specifically noted that she had not appeared to be in "severe excruciating pain" at the administrative hearing, and that she had a "generally unpersuasive appearance and demeanor" (Tr. 27-28). He then gave Dr. Haragsim's findings "close review, but not great weight" and stated that her inability to return to her usual occupation was reflected in the finding that she could not return to her past relevant work

(Tr. 30). He further gave "significant weight" to the state reviewing physician opinion that had been affirmed upon secondary assessment" (Tr. 29).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Additionally, "the notice of the determination or decision must contain an explanation of the weight given to the treating source's medical opinion[s]." Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Here, the ALJ assigned great weight to the state agency physician opinions that the claimant could perform light work, despite the fact that they pre-dated much of the medical evidence in the record and contradicted the ALJ's findings regarding additional severe impairments. It therefore appears that the ALJ took great pains to ignore all evidence unsupported by the state reviewing physician opinion. In fact, he completely discounted the evidence in the record that she had some weakness in her left side, and routine and/or frequent flare-ups of her polycystic kidney disease which caused her to use a cane, which her treating physician characterized as "par for the course." Additionally, as noted above, the state reviewing opinion explicitly only accounted for her polycystic kidney disease as a severe impairment, which is in contradiction to the ALJ's RFC findings of additional severe impairments of hypertension, migraine headaches, anxiety, and depression. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting

that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Furthermore, the ALJ *is required* to consider the effects of all the impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. In this case, the ALJ erred in considering the impairments individually *and* in combination. Although he recited evidence of the claimant's severe impairment migraine headaches, he did not discuss the effects of the migraines on her RFC. Nor did he mention the claimant's nonsevere impairment of recurrent chronic MRSA abscesses in formulating her RFC. This was compounded by the ALJ's failure to assess the combined effect of *all* the claimant's impairments – both severe and nonsevere – in assessing her RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437

Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Because the ALJ failed properly support his RFC findings and further failed to account for all the claimant's impairments when formulating the RFC, the Commissioner's decision should be reversed and the case remanded for further analysis of *all* the evidence related to the claimant's impairments. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**